**LOUISIANA MORTG. CORPORATION, Inc., v. PICKENS et al.**

No. 1869.

Court of Appeal of Louisiana. First Circuit.

June 30, 1938.

*Rehearing denied July 27, 1938.

J. E. Bass and S. W. Plauche, both of Lake Charles, for appellant.

Griffin T. Hawkins and J. J. Tritico, both of Lake Charles, for appellees.

OTT, Judge.

On October 3, 1932, the Virginia-Carolina Chemical Corporation secured a judgment against the plaintiff, the Louisiana Mortgage Corporation, Inc., for $1,422.25, interest and attorneys fees. At that time Thomas G. Trotti, one, of the defendants here, was the president and manager of the plaintiff corporation. On April 24, 1933, Trotti was ousted by the directors of said corporation as president and manager, but he remained as a director. Two days later, a writ of execution issued on the judgment of. the Virginia-Carolina Chemical Corporation, and several notes belonging to plaintiff corporation were seized and sold to satisfy the judgment. Among the assets so seized and sold, was a mortgage note executed .by the defendant, Willie Pickens, in favor of the plaintiff for the sum of $680.53, dated April 24, 1928, payable on demand, with interest and attorneys fees.

It is alleged by the plaintiff in this suit, and the proof shows, that the Virginia-Carolina Corporation, the judgment creditor of plaintiff, was enabled to locate, seize and sell these assets of plaintiff because of the information and assistance given by Trotti to the attorneys of the judgment creditor. The evidence further shows that, as a consideration for thus divulging to the attorneys of the judgment creditor, the whereabouts of the assets of plaintiff corporation, Trotti was to receive 25% of the amount realized on the judgment. In payment of this commission, the judgment creditor, which had become the purchaser of the Pickens note at sheriff sale, assigned and transferred to Trotti this note on the 23d day of September, 1933.

Trotti held this Pickens note and collected small amounts thereon until June 27, 1934, at which time he secured a loan from Wilmer J. Boudreaux, another .defendant in this suit, for $325 for which amount Trotti executed his note in favor of Boudreaux, payable six months after date, and as security for the payment of the note, Trotti pledged to Boudreaux the Pickens note, and another small note. At the time that the Pickens note was pledged to Boudreaux by Trotti, there was a balance due thereon of $475.61.

After Trotti's note to Boudreaux came due, the latter advertised for sale the pledged Pickens note under a clause in the Trotti note authorizing this procedure in default of payment, and at the private sale of the pledged note, Boudreaux became the purchaser. In this suit, plaintiff seeks to be declared the owner ·of this note on the ground that it was illegally acquired by Trotti in an attempt on his part to derive a secret profit out of the assets of the corporation of which he was an officer by accepting this Pickens note as his individual profit for divulging the where-

abouts of the assets of the corporation to a judgment creditor, the result of the illegal transaction giving Trotti a profit out of the assets of the corporation not shared by the other stockholders. Plaintiff also seeks to recover possession of the note from Boudreaux on the ground that he acquired same in bad faith and after maturity of the note, and prays for a judgment against Trotti and Boudreaux for the respective amounts that they collected on the note while same was in their possession. Judgment was also prayed for against Pickens for the balance due on the note, and Trotti having subsequently gone into bankruptcy, his trustee was also made a party. Pickens having died before the suit was filed, no appearance was made for him. Neither did the trustee appear. The suit is therefore against Trotti and Boudreaux.

Both of these defendants filed exceptions of no cause or right of action, the one filed by Boudreaux being sustained. Plaintiff took an appeal from the judgment which sustained the exception, and this court reversed the judgment and remanded the case. 167 So. 914. After the remand of the case, it was tried on the answer filed by Trotti and Boudreaux, and the trial resulted in a dismissal of the suit as to both of these defendants. The case is again before us on an appeal taken by the plaintiff.

There are three principal issues presented by the facts and the pleadings in the case: (1) Whether or not Trotti acquired the Pickens note by illegal practices and by perpetrating a fraud on plaintiff corporation as an officer thereof; (2) if Trotti did acquire the note illegally as to plaintiff's rights therein, the amount collected by him on the note during the time it was in his possession; and (3) whether or not Boudreaux came into possession of this Pickens note when he took it in pledge without any knowledge of the methods used by Trotti in acquiring it and as a holder in due course for value.

(1) Defendant Trotti admits either in his answer or in his testimony that he acquired the Pickens note from the judgment creditor of plaintiff in payment of the commission of 25% which he was to receive for assisting the creditor in locating and seizing the assets of the plaintiff corporation in satisfaction of the judgment. But he contends that at the time he entered into this arrangement to divulge the assets of the corporation to the creditor for a commission of 25% on the amount realized, he had been ousted as the president of the corporation. However, he admits that he was still a director in the corporation, and actually had charge and possession of these notes and other assets of the corporation at the time of the seizure.

■■ There was nothing illegal or improper in the action of Trotti in informing the judgment creditor of his corporation as to the location and nature of the assets of the corporation, nor in turning over to the sheriff these assets under the writ of execution held by the sheriff. He could have been forced to do this by proper legal proceedings. But it was clearly a breach of the duty that he owed the corporation and its stockholders for him to profit individually and personally by this transaction kept secret from the other officers and stockholders and in which profit they did not share. This is what we held when the case was previously before us. See 167 So. 914, supra. Therefore, when Trotti acquired this note, he acquired it for the benefit of the plaintiff corporation, and as between plaintiff and Trotti, the latter held the note from September 23, 1933 to June 27, 1934, as the property of the plaintiff, and any and all amounts collected by him on the note during that time inured to the benefit of the plaintiff.

(2) The next question to determine is the amount collected by Trotti on the note during the time he held it. The endorsements on the back of this note show that four payments were made on it during the time Trotti had possession of it. The first shows the payment of interest on December 5, 1933 to February 10, 1933, but the amount of interest then paid is not given. The prior endorsement shows interest paid to October 18, 1932, and the balance then due on the principal as $475.61. Obviously, if the interest paid to Trotti on December 5, 1933 covered the interest from October 18, 1932 to February 10, 1933, at 8%, he collected at that time between eleven and twelve dollars. The endorsements on the note show three other payments of $15 each, applied on the principal and the interest, while Trotti had the note in his possession; viz., March 18th and April 18th, and May 23d, 1934. This would make a total paid on the note while Trotti had it in his possession of from $56 to $57.

Plaintiff undertook to show by the testimony given by Trotti before the referee in bankruptcy that he had collected from fifty to sixty dollars on this note, but the evidence was excluded by the trial judge as inadmissible. The stenographer who took down the testimony verified the transcription of it and also offered to testify as to the testimony given by Trotti on this point before the referee, but this testimony was also excluded. The testimony given by a party to a suit in a previous suit or in another judicial proceeding in which he was a party is clearly admissible in the second suit without the necessity of laying a foundation to impeach the party as a witness. While we think that the endorsements on the note strongly indicate the amount collected by Trotti during the time the note was in his possession, yet this fact alone is hardly sufficient to form the basis for a judgment against him for any specific amount.

(3) The evidence clearly shows that when Boudreaux acquired the note as a pledge in June, 1934, he had no knowledge of the methods used by Trotti in acquiring it, nor did he have any actual knowledge of any infirmities or defects in the note, other than appeared on its face. He made a bona fide loan to Trotti of $325 and took this note as security. Of course, if the Pickens note, originally payable on demand, was then over due for an unreasonable length of time, Boudreaux was not a holder in due course, and took the note subject to the equities existing between plaintiff and Trotti.

Section 53 of Act No. 64 of 1904, the Negotiable Instruments Law, provides that where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course. As to what constitutes a reasonable time for the negotiation of a demand note so as to make the transferee a holder in due course, we quote the following from 8 American Jurisprudence, page 172, Section 428:

"A holder is not deemed a holder in due course where he takes an instrument, payable on demand, an unreasonable time after its issuance, whether the instrument is payable with or without interest; but where he is otherwise qualified, he is a holder in due course where he takes it within a reasonable time after its issuance. What is a reasonable time within this rule is not necessarily the same as what is a reasonable time in which such an instrument must be presented for payment, and it is not to be arbitrarily stated for it depends upon the nature of the instrument, the usage of the trade or business (if any) with respect to such instrument, and the facts of the particular case, including the payment of interest. It has been said by some cases to be a question of fact for the jury, by others to be a question of law for the court, and by others to be a mixed question of law and fact depending on circumstances. The negotiation of such an instrument on the day of its date, the next day, two days after date, or at various intervals, even to the extent of two years after date and, in an English case, where interest payments were three years in default, eight years after date, has, under varying circumstances, been held to be before the maturity of the instrument so as to give the holder taking it the status of a holder in due course or its equivalent."

While the Pickens note was some six years old when Boudreaux took it in pledge from Trotti, yet the endorsements thereon show that regular installments of ten dollars each were paid thereon more or less regularly monthly for some ten months after the note was given, which amounts were applied to the payment of the interest and small amounts on the principal. Other payments were made thereafter as a notation on the note shows that there was a balance due of $498.52 on April 7, 1931, indicating that more than one hundred dollars had been paid on the principal in addition to the interest since the last ten dollar payment on February 1, 1929. The interest was paid and payments were made on the principal to October 18, 1932, and, as before stated, the interest was paid to February 10, 1933, while Trotti had the note, and three regular monthly payments had been made thereon just before Boudreaux acquired the note.

Considering that the note evidently represented a loan and was secured by a mortgage with the interest payable semi-annually, it is reasonable to assume that it was the intention of the parties that the maker was to pay the note in installments. The relation of the maker and the payee was not such that the note would be expected to be paid in full on demand. No demand was ever made for the payment of the note, so far as the record shows, and

we think in this particular case that there was nothing in the situation or on the face of the note to indicate to Boudreaux that this demand note was over due to the extent of taking him out of the category of a holder in due course, and as such, entitled to the protection given such a holder under Section 57 of said Act No. 64 of 1904, Dart's Statutes, Section 846.

For the reasons assigned, the judgment as to Boudreaux is hereby affirmed; but as to Trotti, the judgment appealed from is hereby annulled, avoided and reversed, and it is ordered that the case be remanded to the district court for the purpose of permitting the introduction of further evidence to show the amount received by Trotti on the note during the time that he had possession of same; cost of the appeal to be paid by Trotti, and all cost of the lower court to await the final determination of the cause.